# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:10-cr-00413-PAB-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

WILLIE DEE COTHRAN,

      Defendant.

---

## ORDER OF DETENTION

---

THIS MATTER came before this court for a detention hearing on December 31, 2025, subsequent to the defendant's arrest on a Petition for Warrant on Person Under Supervision. ECF No. 52. Both sides presented argument on the issue of detention.

Rule 32.1(a)(6) of the Federal Rules of Criminal Procedure governs the issue of detention where a person has been arrested for violating probation or supervised release. The Rule provides that the person must be taken without unnecessary delay before a magistrate judge who, among other things, must make a determination of detention as follows:

> The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. **The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person.**

Fed. R. Crim. P. 32.1(a)(6) (emphasis added).

18 U.S.C. § 3143(a) provides:

(1) Except as provided in paragraph (2), the judicial officer shall order that a person

who has been found guilty of an offense and who is awaiting imposition or execution of a sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. § 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds **by clear and convincing evidence** that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless–

      (A)(i)  the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

      (ii)  an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

      (B)  the judicial officer finds **by clear and convincing evidence** that the person is not likely to flee or pose a danger to any other person or the community.

(emphasis added). "Although the court is not required to consider the factors set out in 18 U.S.C. § 3142(g) in this context, some courts have found those pretrial detention factors helpful to the analysis" under § 3143(a)(1). *See United States v. Wills*, No. 19-40013-03-DDC, 2020 WL 1873622, at *2 (D. Kan. Apr. 15, 2020) (citing *United States v. Eubanks*, No. 17-20184, 2020 WL 1814090, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017)); *see also United States v. Riego*, No. 1:21-CR-596-WJ-1, 2022 WL 15437892, at *1 (D.N.M. Oct. 27, 2022) ("In evaluating whether a defendant has met his burden under 18 U.S.C. § 3143(a)(1), a court may consider the pretrial detention factors set out in 18 U.S.C. § 3142(g).") (citations omitted). Those factors "include the

following: (1) the nature and circumstance of the offense charged, including whether it involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including past criminal history, record of appearing at court proceedings, and whether the defendant has a history of complying with conditions of release, among other things; and (4) whether the defendant's release would pose a danger to any person or the community." *Wills*, 2020 WL 1873622, at *2.

In making its findings of fact, the court has taken judicial notice of the information contained in the court file and considered the arguments presented at the detention hearing. Further, although not obligatory considerations, the court finds the factors set forth in § 3142(g) to be a useful framework and so references them, as appropriate. Having evaluated all appropriate information, the court respectfully concludes that the defendant has not met to his burden to show, by clear and convincing evidence, that his release before his final revocation hearing would not pose a danger to another person or to the community.

Beginning with the nature and circumstances of the offense charged, the record demonstrates that, on February 23, 2011, the defendant was convicted of violating 18 U.S.C. § 922(g)(1), felon in possess of a firearm. *See* Judgment, ECF No. 39. At that time, the defendant was sentenced to a prison term of sixty months, followed by a three-year term of supervised release. *Id.* at 2, 3. The court ordered mandatory, standard, and special conditions of supervision. *Id.* at 3-4. Supervision began on July 17, 2023, and is set to expire on July 16, 2026.

The record shows that the defendant encountered difficulties complying with the terms of his supervised release very shortly after supervision commenced. On September 1, 2023, the

3

defendant's supervision conditions were modified to impose the requirement that he participate in a program of testing and/or treatment for substance abuse. ECF No. 44. On May 13, 2024, the court again modified the defendant's conditions, this time to require his participation in a program of mental health treatment. ECF No. 47.

A third modification was imposed on November 22, 2024, when the court ordered that the defendant be monitored by Global Positions System (GPS) technology for a period of 180 days. ECF No. 49. The precursor to this order of modification was the assessment of the defendant's United States Probation Officer, who reported in a Petition to Modify Conditions of Supervised Release (ECF No. 48) that the defendant had submitted numerous positive urinalyses; that he was struggling to provide verification of his prescription for a substance for which he was testing positive; and that he was routinely missing treatment sessions at Independence House North in a program in which his Probation Officer had required him to participate. For these reasons, the Probation Officer concluded that "the defendant's participation in the location monitoring program with stand-alone monitoring will provide him with an added layer of accountability and structure in the community to help him get back on track with supervision." *Id.* at 2 (noting that, "[s]hould the defendant continue to struggle with sobriety or non-compliance, the Probation Office may pursue a higher level of monitoring like curfew or home detention").

The evidence proffered at the detention hearing showed that, within two days of the November 22, 2024 order mandating GPS monitoring, the defendant violated Colorado state law. Specifically, on November 24, 2024, the defendant committed the crime of Assault Two-

Strangulation, a felony 4, in violation of Colorado Revised Statute § 18-3-203(1)(i).[1] State charges were filed against the defendant on February 5, 2025, which initially included (in addition to the felony strangulation charge) charges of witness/victim intimidation (also a felony 4) in violation of Colorado Revised Statute § 18-3-203(1)(i), and third degree assault knowing/recklessly causing injury, a misdemeanor 3 charge, in violation of Colorado Revised Statute § 18-3-204(1)(a)). After these charges were filed, the defendant's United States Probation Officer sought a fourth modification of the terms of his federal supervision on February 27, 2025, requiring that the defendant participate in a program of inpatient treatment for substance abuse. ECF No. 50. Chief Judge Brimmer imposed this new condition on February 27, 2025. ECF No. 51.[2]

On September 29, 2025, the defendant pleaded guilty to the felony strangulation charge. *See* ECF No. 52 at 3. He was sentenced to probation on that charge in late November 2025. At the detention hearing, the defendant's counsel described this as an unusually light sentence, under the circumstances, suggesting the existence of circumstances mitigating the seriousness of the charge.

The court has carefully considered counsel's representations, along with her explanation of the defendant's having gained sole custody of his young son and his commitment to

---

[1] It is unclear whether the defendant had been placed on an ankle monitor by November 24, 2024, the date on which he committed the new-law violation discussed in this Order.

[2] A United States Probation Officer stated at the detention hearing that the inpatient-treatment condition was sought based on the assumption that the defendant would post bond on the state charges. However, the defendant was instead incarcerated in state custody until his sentencing in late November 2025.

substance-abuse treatment during the approximately ten months of his recent state incarceration. These are laudable achievements, reflecting positive aspects of the defendant's history and characteristics. But the fact remains that the defendant has admitted to committing a violent felony while on supervision, constituting a Grade A violation of his supervised release.[3] The weight of the evidence that the defendant has in fact violated the terms of his supervised release thus appears strong.

Further, the court must take into account the aspects of the defendant's history and characteristics reflected in the strangulation incident that prompted the defendant's guilty plea. The proffered evidence indicates that the victim was the defendant's wife, from whom he has been separated at different times and with whom he appears to have had a tumultuous relationship.[4] The domestic-violence incident at issue commenced on November 23, 2024, when the defendant—seemingly jealous about his wife's purported relationship with an ex-boyfriend— hit his wife's phone while she was holding it to her ear. The defendant is alleged to have threatened, "I will kill you bit**," and then to have strangled his wife. While the victim was not rendered unconscious, she reported to law enforcement officers that the defendant's actions caused her to have difficulty breathing. A second domestic-violence incident occurred the next

---

[3] At the detention hearing, defense counsel and the court engaged in a colloquy concerning whether the defendant's guilty plea mandates a term of imprisonment for violating supervised release. Counsel explained that the defendant will contend that it does not. Regardless, that is a decision for Chief Judge Brimmer, and not this court, to make. This court's obligation, at this juncture, is to assess whether the defendant has established, by clear and convincing evidence, that his release would not pose a danger to the community.

[4] The court understands the two to be separated, if not divorced, at this time.

day, on November 24, 2024. According to the proffered evidence, the defendant's wife reported that, while she and the defendant were in a moving vehicle, the defendant accused her of cheating. The victim reported fearing for her safety, prompting her to jump out of the moving vehicle. Officers observed discoloration and scratches on the victim's neck and an injury to her lip.

These incidents strongly suggest that the defendant has a propensity to violence that he lacks the ability to control. This characteristic indicates that the defendant poses a danger to the community and militates against release and in favor of detention.

At the detention hearing, the defendant proposed that he be released to the custody of a Ms. Thomas, with whom he apparently is in a relationship at this time. Ms. Thomas, per the proffer, has taken care of the defendant's son during his most recent period of incarceration. While the court has no reason to question Ms. Thomas's good will with respect to the defendant, her support—viewed in light of the totality of the circumstances before the court—is insufficient for the court to find that the defendant would not pose a danger to the community if released.

The issue is that the defendant bears the burden to present "clear and convincing" evidence that he does not pose a danger to the community. The clear and convincing standard of proof is "satisfied by evidence that would place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (cleaned up) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). In light of the defendant's recent history of violence while on federal supervision, viewed in connection with his repeated noncompliance with the terms of his supervised release conditions,

the undersigned cannot find that the defendant's release to Ms. Thomas's house (even if she were made a third-party custodian) suffices to create in the court "an abiding conviction" that it is "highly probable" the defendant would not pose a danger to the community. In so concluding, the court also takes into account that both the government and the United States Probation Office disagreed with the proposition that the defendant's release would not jeopardize community safety. Accordingly,

IT IS RESPECTFULLY ORDERED that the defendant is committed to the custody of the Attorney General or her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and

IT IS FURTHER ORDERED that the defendant is to be afforded a reasonable opportunity to consult confidentially with defense counsel; and

IT IS FURTHER ORDERED that upon order of this Court or on request of an attorney for the United States, the person in charge of the corrections facility shall deliver defendant to the United States Marshal for the purpose of an appearance in connection with this proceeding.

DATED: January 2, 2026                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge